## P. AND J. HOLMES *against* TREMPER.

REPLEVIN for a cider mill and cider-mill press. *Avowry*, that the place in which, &c., is a certain farm of seventy acres, in *Kingston*, &c., whereof the defendant had been possessed for six years immediately antecedent to the 9th of *May*, 1820, as the tenant, from year to year, of *Jacob I. Tremper*, who was, at the first letting thereof, seised in fee; and whilst such tenant, and long prior to said 9th of *May*, to wit, on the 1st of *May*, 1818, the defendant, at her own expense, and for her own use, built the said mill and press, and used the same for making the cider on said farm, during her tenancy; and at the expiration of her tenancy, on the said 9th of *May*, when moving from the said farm, she removed the said mill and press, as, &c., without this, that the said mill and press, at, &c., were in the said plaintiffs.

*Plea:* that prior to said 9th of *May*, the time of taking said cider mill and press, to wit, on the 1st of *May*, 1820, one *J. Hasbrouck* was seised in fee of the farm, &c., mentioned in the avowry, by title derived from the said *J. I. Tremper*, by sundry conveyances, and the said cider mill and press were, at the time when said *Hasbrouck* became seised of the said farm, and before the time of taking thereof, *erected and standing upon, and annexed to, and parcel of the said farm*, and so remained at the time of taking thereof, as aforesaid; and the said *Hasbrouck* being so seised, and before the same was taken as aforesaid, on the first day of *May*, 1820, at, &c., demised the said farm, with the appurtenances, to the said plaintiffs, to hold the same for two years from the 1st of *May*, 1820; by virtue of which said demise, they, before the taking said mill and press, to

*A cider mill and press, erected by a tenant holding from year to year, at his own expense, and for his own use, in making the cider on the farm, are not fixtures, but personal property, belonging to the tenant, who may remove them, at the expiration of his tenancy; and if he enters on the land, after the expiration of the term, and removes them, though he may be liable, as a trespasser on the soil, and for breaking the close, yet the property in the cider mill and press is not changed, but remains in the tenant:*

NEW-YORK,  wit, on the 1st of *May*, 1820, entered into said farm, and
May, 1822.  were possessed thereof, &c. &c.

HOLMES      There was a *demurrer* to the plea, and joinder; and the
v.          same was submitted to the Court without argument.
TREMPER.

SPENCER, Ch. J. delivered the opinion of the Court. The
question arising upon the pleadings has never been decided
in this Court. The case of *Bradley* v. *Osterhout*, (13
*Johns. Rep.* 404.) was between the purchaser and the ven-
dor of a farm. The breach of covenant assigned was, that
after making the covenant, and before the deed was given,
the vendor removed from the premises a cider mill, which
was averred to be annexed to the freehold, and a part
of the farm. The defendant pleaded that he had conveyed
the farm, &c., to which the plaintiff demurred. The plea
was adjudged to be bad, because it did not answer the
breach assigned, and because, whether the covenant to con-
vey the farm would embrace the cider mill, would depend
on circumstances; and that as the declaration averred that it
was annexed to the freehold, and made part of the farm,
the plea should have answered that breach. The case of
*Hermance* v. *Vernoy*, (6 *Johns. Rep.* 5.) was decided on pe-
culiar circumstances, and did not profess to examine the
question of fixtures, as between landlord and tenant. When
a farm is sold, without any reservation, the same rule would
apply, as to the right of the vendor to remove fixtures, as
exists between the heir and executor; and it is not now ne-
cessary to discuss that branch of the law.

It is admitted, in this case, that the defendant erected the
cider mill and press, at her own cost, during her tenancy, for
the purpose of making the cider on the farm. I confess, I
never could perceive the reason, justice, or equity, of the old
cases, which gave to the landlord such kind of erections, as
were merely for the use and convenience of the tenant, the
removal of which neither defrauds, nor does the least injury
to the landlord. The rule anciently was very rigid; but I
think it has yielded materially to the more just and liberal
notions of modern times. In *Lawton* v. *Lawton*, (1 *Atk.*
13.) the question arose between the tenant for life and a re-
mainder-man. The subject of controversy was a fire-engine,

set up by the tenant for life, for the benefit of a colliery; and the point was, whether it should be considered as personal estate. It appeared, that in building sheds for securing the engine, holes were left for the ends of timber, to facilitate removal, and they were capable of being removed. Lord *Hardwicke*, after observing that the rigour of the law was relaxed upon this subject, pronounced it a mixed case between enjoying the profits of the land, and carrying on a species of trade. He adverted, with evident approbation, to a decision of Chief Baron *Comyns*, at the assizes, at *Worcester*, in which the subject of discussion was a cider mill, and the question was between the executor and the heir. In that case, it was decided, that though cider is part of the profits of the real estate, yet it was personal estate, notwithstanding, and should go to the executor. Lord *Hardwicke*, in the principal case, decided, that the fire engine was personal estate; and he makes a very strong distinction between the rights of a tenant from year to year, as between him and the landlord, and between a tenant for life and remainder-man. In *Lawton* v. *Salmon*, (1 *H. Bl.* 259. in the notes,) Lord *Mansfield* stated the change that had taken place in the law, as between landlord and tenant. He observed, that many things may now be taken away which could not be formerly; such as erections for carrying on any trade, marble chimney-pieces, and the like, when put up by the tenant. This, he adds, is no injury to the landlord, for the tenant leaves the premises in the same state in which he found them, and the tenant is benefited.

In the case of *Culling* v. *Tufnal*, before *Treby*, Chief Justice, in 1694, (*Bull. N. P.* 34.) the tenant had erected a barn on the premises, and put it on *pattens* and *blocks*, but not fixed in, or to the ground, and removed it off; he was held to be justified, because it was usual to remove such buildings in that part of the country. But *Buller* states, that the question would now be determined in favour of the tenant without difficulty, for that, of late years, many things are allowed to be removed by tenants, which were not formerly; and he specially instances cider mills, which the tenant may now remove. In *Dean* v. *Allalley*, (3 *Esp. Rep.* 11.) Lord *Kenyon* held, that the law would make the most

favourable construction for the tenant, where he had made necessary and useful erections, for the benefit of his trade or manufacture; and he said it had been held so, in case of cider mills, and in other cases; and he should not narrow the law, but hold erections of that sort, made for the benefit of trade, (or constructed as the sheds were in that case,) to be removable at the end of the term. In the case of *Elwes* v. *Maw*, (3 *East*, 38.) the buildings erected by the tenant, and which he removed, were of brick and mortar, and tiled, and the foundations were one foot and a half deep in the ground; and Lord *Ellenborough* said, that these were fixtures, and not removable, as between landlord and tenant. This case does not call for any expression of our opinion on the correctness of that decision, nor do we intend to approve or disapprove of it. It is very materially different from the present case. Lord *Ellenborough* refers to the decision of Chief Baron *Comyns*, in the case of the cider mill; he says, he may have considered it a mixed case, between enjoying the profits of the land, and carrying on a species of trade, and as considering the cider mill as properly an accessary to the trade of making cider; and I can see no good reason why it may not thus be considered, for cider is an article of trade. He refers, also, to the case before Chief Justice *Treby*, and admits that the tenant might remove the barn on pattens and blocks; for, he says, they were not fixed in or to the ground, and so they were not fixtures.

The plea here states, that the mill and press were annexed to, and parcel of, the farm; but it does not state how they were annexed; whether the mill was let into the ground or not. It states a mere matter of law, and not of fact. But it is immaterial whether the mill was let into the ground or not. The tenant, in my judgment, had an unquestionable right to remove it, as personal property.

The plaintiff's counsel supposes that the tenant could not remove this mill after the end of the term. It is true, that if she entered upon the plaintiff's possession, and took away the mill, she would be a trespasser on the soil, and answerable for breaking the close; but leaving the mill there, if it belonged to her, would not work any change of the property; and in this action, the trespass for entering on the premises, is not in

question; and when it is said that the removal must be with- in the term, or else he will be a trespasser, it means only a trespasser as regards the entry.

Judgment for the defendants.