WILLIAM MURRAY, Appellant, *v.* MICHAEL WALKER, Respondent.

A party making title to premises by the assignment of the legal title as security for a debt, holds the same in the character of mortgagee, and as mortgagee cannot maintain ejectment for the possession of the premises. (2 R. S., 312, § 57.)

A deed of conveyance, absolute upon its face, if intended for the security of a debt, is in equity a mortgage.

If one, holding as assignee, and for security, a certificate of sale by the State from the surveyor-general, pays up the balance due the State, and takes a patent for the premises, he nevertheless holds as mortgagee in equity, although the legal title, upon the face of the patent, be absolutely in him.

THIS is an action of ejectment, brought to recover the possession of certain lands and premises in the city of Auburn. The land in controversy belonged to the State, and was part of the Auburn State prison property, and was sold in 1847 under and by virtue of an act of the legislature passed in that year. One Theron Green became the purchaser, and received on the 17th of September, 1847, a certificate of purchase from the then surveyor-general of the State. This certificate stated that Green had purchased, that he had paid a part of the purchase-money, and that the balance was payable in the manner required by chapter 9, title 5, part 1 of the Revised Statutes of 1829. This certificate was shortly afterwards, and in November, 1847, assigned by Green to one David L. Stanford. On the 5th day of January, 1853, Stanford assigned this certificate to the plaintiff, authorizing and empowering him to take and receive a deed for the premises for his own use and benefit, but adding in the assignment that it was made "to secure the payment of eight hundred and fifty dollars, with interest, two years from this date." Stanford went into possession at the time of the assignment to him by Green, and made valuable improvements, erected buildings, and by himself and his tenants remained in possession down to the 14th October, 1857, when the premises were purchased under a foreclosure sale by the lessor of the defendant. The mortgage thus foreclosed was executed by

Stanford to Erastus Corning, 10th August, 1855, more than two years after the transfer of the certificate to the plaintiff. The premises were sold under a foreclosure of this mortgage and purchased by Corning on the 14th October, 1857, and defendant, who had been the tenant of Stanford, remained in possession as the tenant of Corning. On the 11th of September, 1857, and while the mortgage of Corning must have been in process of foreclosure, the plaintiff, continuing to hold the assignment of the original certificate of the surveyor-general, obtained a patent of the land from the State, and subsequently brought this action to recover the possession. The justice before whom the cause was tried held and decided that, though the legal title was in the plaintiff, it was so only in form; that he was, in fact and in equity, only a mortgagee, and had no right to the possession; and granted a nonsuit. The judgment was affirmed at a General Term of the Supreme Court in the seventh district, and plaintiff appealed to this court.

*George Rathbun*, for the appellant.

—— *Cox*, for the respondent.

CAMPBELL, J. Since an equitable defense may now be interposed to an action of ejectment, as well as to any other action at law, it would seem, from the conceded facts in this case, that there could hardly be room for doubt as to the correctness of the decision of the Supreme Court. What is a mortgage, in its comprehensive sense? Kent says (vol. 4, p. 151, of his Commentaries), "A mortgage is the conveyance of an estate by way of pledge for the security of debt, and to become void on payment of it. The legal ownership is vested in the creditor, but, in equity, the mortgagor remains the actual owner, until he is debarred by his own default or by judicial decree." In this case, the plaintiff, by the assignment of the certificate and the patent, became the legal owner. But, in equity, Stanford remained the actual owner. As such, he made the improvements and mortgaged the premises to Corning, and the latter, by foreclosure of his mortgage

and purchase, became the actual owner. He foreclosed and cut off the equity of redemption, as between him and Stanford, and by his purchase became the owner of such equity, and then interposes it as a defense to the plaintiff's claim, which is that of legal owner. These are simple and elementary principles, and are controlling. The plaintiff never foreclosed the equity of redemption of Stanford—never took any steps, except to perfect the title by the patent. As holder of the certificate, the plaintiff, with the consent of the commissioners of the land office, could have brought an action for injuries done to the land, the same as if a patent had been granted. (1 R. S., 5th éd., p. 541, § 30.) By the express terms of the statute he was entitled to the patent, on payment of the balance due on the certificate. Plaintiff has, at all times since the transfer of the certificate to him, been virtually the legal owner; while Stanford was, at all times, down to the foreclosure sale, the actual owner. This is simply, therefore, an action of ejectment by the mortgagee against the owner of the equity of redemption; in other words, the actual owner in possession. The fact that the conveyance under which the plaintiff claims, namely, the patent, is absolute on its face, makes no difference. The certificate which was the foundation of the patent, and as holder of which the plaintiff procured the patent, recited that it was assigned merely as security. As was said by the chancellor, in *Clark* v. *Henry* (2 Cow., 327), "though the conveyance be absolute in terms, yet if the intention appear to make the estate redeemable, it will continue so until foreclosure; for the maxim of equity is, that the estate cannot be a mortgage at one time and an absolute purchase at another." The obtaining the patent was in no sense a foreclosure, neither in fact nor technically. There was no advertisement and sale constituting a statute foreclosure. There was no action commenced and prosecuted, making the owner of the equity of redemption a party. The plaintiff was clearly not entitled to the possession of the premises, and his complaint was properly dismissed.

The judgment should be affirmed.

WRIGHT, J.   The premises, which belonged to the State, and were, by an act of the legislature, ordered to be sold, were on the 17th September, 1847, purchased by one Theron Green, the latter receiving from the surveyor-general a certificate of purchase.   Green held the certificate until the 3d November, 1847, when he assigned to David L. Stanford all his right, title and interest in the certificate, and in the land and premises mentioned therein.   Stanford went into possession, and erected a building, putting in the defendant as tenant.   In August, 1855, Stanford mortgaged the premises to Erastus Corning, of Albany; which mortgage was foreclosed in October, 1857, and the premises bid in by Corning, under whom the defendant continued to hold as tenant.

On the 5th January, 1853, Stanford assigned his certificate of purchase to the plaintiff, the assignment on its face expressing that it was "to secure the payment of eight hundred and fifty dollars two years from this date."   On the 11th September, 1857, the plaintiff paid up the balance due on the certificate, and took the title to himself by patent from the State.

Corning having foreclosed, and the defendant being in possession as his tenant, in December, 1857, the plaintiff brought this action of ejectment.   The question is, can it be maintained?

If the court below were right in the conclusion that the plaintiff's title was a *mere mortgage*, although, in form, he held the legal title, ejectment could not be maintained, as the statute declares that "no action of ejectment shall be maintained, by a mortgagee or his assigns or representatives, for the recovery of the possession of the mortgaged premises." (2 R. S., p. 312, § 57.)   This statute forbidding the action, as was held in *Stewart* v. *Hutchins* (13 Wend., 486), "embraces in terms every description of mortgage which could previously have been made the foundation of an action of ejectment."   The question then recurs as to the nature of the plaintiff's title.

I think the Supreme Court decided correctly.   The interest which the plaintiff had in the premises, was derived from

the assignment of Stanford to him in January, 1853. This assignment was, on its face, nothing but a mortgage. It is expressed in terms to be made to secure the payment of $850, with interest two years from its date, and a transfer of property as security, is, in equity, but a mortgage. A deed or conveyance, absolute on its face, if really only intended to secure a debt, is deemed, in equity and at law, a mortgage, though the defeasance is by parol. But here the instrument was not an absolute assignment of Stanford's whole interest. Being, then, an assignment by way of mortgage, as between the original parties and their representatives, the rule applies "once a mortgage, always a mortgage." *Clark* v. *Henry* (2 Cowen., 327). The character and quality of a mortgage, and the right of redemption, as an inseparable incident, continued. This right of redemption is favored in equity, and the policy of our system of jurisprudence forbids the barring of it, except by the regular methods prescribed by law. Stanford and his assigns had this right, and could only be divested of it by a foreclosure. The fact that the plaintiff advanced the unpaid purchase-money, and took the title by patent from the State, in virtue of his right as mortgagee of Stanford's interest, did not alter the relation or rights of the parties. Holding in form the legal title under the patent, placed him in no other or different relation, or in a position more defiant of equities, than in any case where the mortgagor conveys the absolute title in form, but in substance as the mere security for a debt. The equity of redemption of Stanford and his assigns, still clung to the plaintiff's title. It cannot be doubted, that after the patent had been procured, Stanford, upon tendering to the plaintiff the amount to secure which the contract was assigned, and the amount due on it which the plaintiff paid to the State, with interest on those sums, could have compelled the latter to convey to him the premises described in the contract or certificate.

But Stanford, who was in possession when he assigned to the plaintiff and at the time of default of payment, instead of redeeming, mortgaged to Corning, as if he held in fee. Corning foreclosed his mortgage, Stanford transferred to him

the possession of the premises, and the defendant Walker attorned to him as tenant. This conveyance of the premises to Corning by Stanford (although by way of regular mortgage and foreclosure) transferred with the possession at least all Stanford's equities of redemption. The right of redeeming from the plaintiff, which was before in Stanford, was then in Corning; and had the plaintiff then filed his bill against the defendant, Corning would have had the right to answer; and either contest the honesty of the loan, or tender the money and redeem. But he was not bound to move until the plaintiff proceeded to foreclose in the regular way; nor could Stanford, after conveying to him all his rights, by any consent or collusion with the plaintiff, effect the ends of foreclosure, in some summary way as against him.

The case turns wholly upon the construction of the instrument of July, 1853. If that was a mere mortgage of Stanford's interest, (which I think it was), and not a conditional sale of the certificate, and of his interest in the land therein described, as the plaintiff's counsel claims it to be, I do not understand it to be seriously contended that it lost (as between the original parties and their representatives) its character as a mortgage by any subsequent action of the mortgagee. Being a mortgage, the plaintiff could not recover in ejectment, for the statute forbade it.

I think the judgment should be affirmed.

All concur except Denio, Ch. J., who dissented.

Judgment affirmed.